IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES E. DUNMORE,
#R-64188,

      Plaintiff,

vs.                                                    Case No. 18-CV-731-MJR

NICHOLAS R. LAMB,
WEXFORD,
LORIE CUNNINGHAM,
DR. STEVE MEEKS,
DR. F. AHMED,
CLANDIA DOWTY,
SHERRY COLLINS,
MS. BROOKS,
JANE DOE NURSE #1,
JANE DOE NURSE #2,
JANE DOE NURSE #3,
JOHN DOE CORRECTION OFFICERS #1,
JOHN DOE CORRECTION OFFICERS #2,
JOHN DOE CORRECTION OFFICERS #3, and
ILLINOIS DEPARTMENT OF CORRECTIONS,

      Defendants.

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff James E. Dunmore, an inmate currently housed at Lawrence Correctional Center ("Lawrence"), filed this *pro se* action pursuant to 42 U.S.C. § 1983.[1] Among other things, Plaintiff claims that Defendants have exhibited deliberate indifference to his chronic back pain. Plaintiff seeks monetary damages.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

---

[1] Plaintiff's Complaint was originally filed on January 2, 2018, in the United States District Court for the Central District of Illinois. Plaintiff's claims arose at Lawrence, an institution situated in this judicial district. Accordingly, on April 4, 2018, the Central District of Illinois transferred the action here pursuant to 28 U.S.C. § 1404(a).

1

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Plaintiff underwent back surgery in 2011. (Doc. 1, p. 5). The back surgery left Plaintiff confined to a wheelchair. *Id.* Additionally, because of his back condition, Plaintiff suffers from serious "physical pain" and "nerve damage pain." *Id.* In 2012, Plaintiff was transferred to Lawrence. *Id.* At that time, Lawrence physicians prescribed Tramadol (100 milligrams three times a day) and Neurontin (900 milligrams in the morning and afternoon and 1200 milligrams in the evening) to control Plaintiff's pain. (Doc. 1, p. 6). According to Plaintiff, this pain management regimen effectively controlled his pain. *Id.* Additionally, Plaintiff asserts that he is

2

a mental health patient and that this pain management regimen was an important aspect of controlling his stress and anxiety.  *Id.*

Tramadol is a controlled medication.  *Id.*  Therefore, Plaintiff went to the Health Care Unit to obtain his midday dose from the nurses on duty.  *Id.*  On September 14, 2017, Dr. Ahmed told Plaintiff "the nurses no longer want [Plaintiff] to come to the Health Care Unit to receive his 12 noon pain meds, and wanted him (Dr. Ahmed) to take [Plaintiff] off his 12 noon dosage."  *Id.*  Plaintiff objected, stating that Dr. Ahmad, and not the nurses, should be making decisions about Plaintiff's medication.  *Id.*  Dr. Ahmed explained that, even though he was the medical director, he needed to get along with the nurses because they run the Health Care Unit.  *Id.*  Accordingly, to avoid conflict, Dr. Ahmed complied with the nurses' request.  (Doc. 1, p. 7).

Immediately after relaying this information, Dr. Ahmad had Plaintiff speak with Nurse Brooks, "so she [could] tell [Plaintiff] just what was going to take place from this point, not the doctor."  *Id*.  Nurse Brooks told Plaintiff that, from now on, he would receive his pain medication in two doses – morning and night.  *Id.*  Plaintiff objected, telling Nurse Brooks that his prior physicians prescribed the noon dosage to address breakthrough pain.  *Id.*  Additionally, Plaintiff told Nurse Brooks that taking the same amount of medication in two (as opposed to three) doses would require Plaintiff to take too much medication at one time.  *Id.*  The Complaint suggests that Nurse Brooks disregarded Plaintiff's concerns.  (Doc. 1, pp. 7, 21-22).

For the next few days, Plaintiff submitted several sick call requests regarding back pain, but did not receive a response.  (Doc. 1, p. 7).  At approximately 1:30 a.m. on September 19, 2017, Plaintiff began experiencing severe pain.  *Id.*  He spoke with the on-duty correctional officer, who said he would place Plaintiff on the sick call list.  *Id.*  Then, on the evening of September 19, 2017, Plaintiff spoke with Jane Doe #1 (described in the body of the Complaint as

3

the on duty nurse responsible for delivering medication to inmates) about his severe back pain. (Doc. 1, p. 8). Jane Doe #1 said she would place Plaintiff on the sick call list, but declined to give Plaintiff additional pain medication. *Id.* Plaintiff waited all day on September 20, 2017, but was not called to see a physician. *Id.*

On September 21, 2017,[2] Plaintiff called a family member, Ms. Machado, and explained that he was in severe pain but had not been called to see a physician. *Id.* Ms. Machado contacted Assistant Warden Brookhart and told him Plaintiff was in extreme pain and, despite several requests, had yet to receive medical attention. (Doc. 1, p. 9). Assistant Warden Brookhart said he would make sure Plaintiff received the necessary medical care. *Id.* Ms. Machado also called "IDOC in Springfield." *Id.* "The IDOC told Ms. Machado that they would contact the Warden." *Id.* The following day, Warden Brookhart called Ms. Machado and, once again, assured her Plaintiff would be given access to a doctor. *Id.*

On September 23, 2017, Plaintiff "broke down and began screaming as a result of the pain he was experiencing." (Doc. 1, pp. 9-10). A correctional officer contacted the Health Care Unit and learned that, per Assistant Warden Brookhart, Plaintiff was supposed to have been seen by a doctor on the previous day. (Doc. 1, p. 10). Accordingly, Plaintiff was taken to the Health Care Unit to be seen by Dr. Ahmed. *Id.*

During this visit, Dr. Ahmed reiterated that the nurses did not want him to prescribe midday pain medication for Plaintiff. (Doc. 1, pp. 10, 23-24).[3] Dr. Ahmed said he did not want to upset the nurses or have any problems with them. *Id.* Dr. Ahmed then spoke with Plaintiff's ADA Assistant, telling him the same thing. *Id.* When Plaintiff objected, Dr. Ahmed

---

[2] According to the Complaint, Lawrence was on a level one lockdown on September 21, 2017. (Doc. 1, p. 9).
[3] According to the Complaint, this visit occurred on September 23, 2018, after a correctional officer called the Health Care Unit and learned about Assistant Warden Brookhart's directive. (Doc. 1, pp. 9-10). According to a grievance attached to the Complaint, this visit occurred on September 20, 2018, after a "family member" spoke with Assistant Warden Brookhart. (Doc. 1, pp. 23-24).

4

contemplated prescribing Tylenol-3. *Id.* Plaintiff told Dr. Ahmed that, like Tramadol, Tylenol-3 was a controlled medication. *Id.* Accordingly, Tylenol-3 also had to be dispensed by the nurses. *Id.* Dr. Ahmed told Plaintiff he would have to speak with one of the nurses. (Doc. 1, p. 24). Shortly after Dr. Ahmed made that statement, Nurse Collins entered the examination room, "telling the doctor what to do." *Id.* Ultimately, Dr. Ahmed did not prescribe Tylenol-3 (or any other midday pain medication). (Doc. 1, pp. 10, 24). Instead, "once again Dr. Ahmed did as the nurses told him." (Doc. 1, p. 10).

Plaintiff submitted emergency grievances to Warden Lamb on September 21, 22, and 23. (Doc. 1, pp. 9, 21-26). In the grievances, Plaintiff claimed as follows: (1) following back surgery in 2011, Plaintiff had been "confined to a wheelchair with both physical and serious nerve damage pain;" (2) between 2011 and 2017 he had an effective pain management regimen, which had been prescribed by previous physicians; (3) on September 14, 2017, Dr. Ahmed and various nurses withdrew Plaintiff's midday Tramadol prescription for nonmedical reasons; and (4) the change in Plaintiff's pain management regimen was causing Plaintiff severe pain. (Doc. 1, pp. 21-26). Warden Lamb concluded the grievances were not an emergency and directed Plaintiff to submit his grievances in the normal manner. *Id.*

Between September and November, Plaintiff continued to experience pain and submitted numerous sick call requests. (Doc. 1, pp. 10-11). He also "stop[p]ed everyone that he [saw] to try and get him to see a doctor for the pain he [had] been suffering with because Defendants at the Health Care Unit failed to adequately manage [his] pain." (Doc. 1, p. 11). Plaintiff claims that the ongoing pain put his "mental stability in question[,]" requiring him to contact his mental health specialist. (Doc. 1, p. 8).

Plaintiff was not given access to the Health Care Unit again until November 15, 2017.

The examining nurse "Jane Doe" expressed annoyance and asked what Plaintiff was crying about. (Doc. 1, p. 11). She then said Plaintiff should see the doctor on November 16, 2017. However, Plaintiff was not called to see the doctor on November 16, 2017.

In connection with the above allegations, Plaintiff states that he is pursuing claims for deliberate indifference, failure to intervene, civil conspiracy, and intentional infliction of emotional distress. (Doc. 1, pp. 11-18). Plaintiff is seeking monetary damages. (Doc. 1, p. 19).

### Dismissal of Certain Defendants

Before outlining Plaintiff's claims, the Court finds it appropriate to address Plaintiff's failure to include sufficiently specific allegations against Health Care Unit Administrator Cunningham, IDOC Medical Director Meeks, Nurse Dowty, Jane Doe Nurse #2, Jane Doe Nurse #3, and the three groups of John Doe Correction Officers. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).

Where a plaintiff does not include a defendant in his statement of claim, or includes only conclusory legal statements against him, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). *See also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"). Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *Collins*, 143 F.3d at 334. And in the case of those defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)

(citations omitted).

As is set forth more fully below, the Complaint does not include sufficiently specific allegations as to Health Care Unit Administrator Cunningham, IDOC Medical Director Meeks, Nurse Dowty, Jane Doe Nurse #2, Jane Doe Nurse #3, or the John Doe Correction Officers. As such, these defendants will be dismissed without prejudice.

### *John Doe Correction Officers*

Plaintiff identifies three groups of unknown correctional officers as defendants in his case caption: (1) John Doe Correction Officers #1; (2) John Doe Correction Officers #2, and (3) John Doe Correction Officers #3. (Doc. 1, p. 1). Plaintiff provides the following definition for his John Doe defendants: "Defendants John Does 7:00 a.m. to 3:00 p.m. shift officers, John Does 3:00 p.m. to 11:00 p.m. shift officers, and John Does 11:00 p.m. to 7:00 a.m." (Doc. 1, p. 5). The body of the Complaint, however, does not direct any allegations against these groups of officers (either as identified in the case caption or as defined in Plaintiff's list of defendants). Plaintiff alleges that on September 21, 2017 and September 23, 2017, he told *a* correctional officer that he was experiencing severe back pain and that, on both occasions, the subject correctional officer said he would place Plaintiff on the sick call list. (Doc. 1, pp. 7, 9-10). However, it is unclear how Plaintiff's claims pertaining to *a* correctional officer relate to his specified groups of John Doe Correction Officers. Further, Plaintiff's interaction with *a* correctional officer on a particular shift cannot state a claim as to all correction officers working the same shift. He also baldly asserts that all John Doe Correction Officers were deliberately indifferent to his serious medical needs by failing to ensure that he was placed on the sick call list. Without more, this vague and conclusory allegation fails to state a claim as to any of the John Doe Correction Officer Defendants. Accordingly, the John Doe Correction Officer

Defendants shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### *Jane Doe Nurse #2 and Jane Doe Nurse #3*

Plaintiff identifies three unknown nurses in his case caption: (1) Jane Doe Nurse #1, (2) Jane Doe Nurse #2, and (3) Jane Doe Nurse #3. (Doc. 1, p. 1). Plaintiff defines these unknown defendants as being the "licensed nurses Wexford employees that were responsible for the care and custody of [Plaintiff] either directly or indirectly, while he was incarcerated at Lawrence." (Doc. 1, p. 5). Plaintiff generally alleges that all three unknown nurses were deliberately indifferent to his medical needs by failing to ensure that he was placed on the sick call list (*see* Doc. 1, p. 12) and that they engaged in a conspiracy to deprive Plaintiff of his pain medication (*see* Doc. 1, p. 15). However, the body of the Complaint is devoid of any factual allegations directed against Jane Doe Nurse #2 or Jane Doe Nurse #3. Without more, the vague conclusory allegations referencing these unknown nurses do not provide the requisite notice and are insufficient to state a claim. As such, Jane Doe Nurse #2 and Jane Doe Nurse #3 shall be dismissed without prejudice.

### *Nurse Dowty*

As with Jane Doe Nurse #2 and Jane Doe Nurse #3, Plaintiff generally alleges that Nurse Dowty was deliberately indifferent to his medical needs by failing to ensure that he was placed on the sick call list and that she engaged in a conspiracy to deprive Plaintiff of his pain medication. (Doc. 1, pp. 12, 15). However, the Complaint does not include any allegations describing any interactions between Plaintiff and Nurse Dowty. Without more, the Complaint's allegations as to these individuals are too vague and conclusory to provide the requisite notice or

to suggest personal involvement by Nurse Dowty. As such, Nurse Dowty shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### *Health Care Unit Administrator Cunningham and IDOC Medical Director Meeks*

Plaintiff alleges that Health Care Administrator Cunningham and IDOC Medical Director Meeks are subject to liability because they are supervisory officials. (Doc. 1, pp. 12, 14). As noted above, however, neither defendant is subject to liability merely because he or she maintained a position of authority. The Complaint is otherwise devoid of any factual allegations pertaining to Cunningham or Meeks, let alone any factual allegations suggesting that either individual was personally involved in violating Plaintiff's constitutional rights.[4] As such, Cunningham and Meeks shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### *Illinois Department of Corrections*

Plaintiff also names the Illinois Department of Corrections ("IDOC") as a defendant. To the extent that Plaintiff is attempting to bring a § 1983 claim against IDOC, the claim is not viable. This is because IDOC, as a state agency, is not a "person" that may be sued under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)); see also 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

---

[4] Plaintiff includes several conclusory allegations against Meeks. For instance, Plaintiff claims that Meeks is guilty of "turning a blind eye" to Plaintiff's medical treatment. However, the claim is devoid of any factual allegations describing how Meeks turned a blind eye or was otherwise involved in violating Plaintiff's rights. Further, there is no indication that Plaintiff relayed any complaints about his medical care to Meeks.

or other proper proceeding for redress....").

To the extent that Plaintiff seeks to impose *respondeat superior* liability on IDOC in connection with his state law claim, the claim is not viable. Illinois, as a general matter, recognizes the *respondeat superior* doctrine. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009); *see also Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004). However, "the Eleventh Amendment prohibits a suit in federal court 'in which the State or one of its agencies or departments is named as the defendant.' " *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). This includes "state-law claims brought into federal court under pendent jurisdiction." *Pennhurst State Sch.,* 465 U.S. at 121. IDOC, as an Illinois state agency, enjoys immunity from suit in federal court. *See Ford v. Lane*, 714 F.Supp. 310, 313 (N.D. Ill. 1989). A state may waive Eleventh Amendment immunity. *See MCI Telecomms. Corp. v. Illinois Bell Tel. Co*., 222 F.3d 323, 337 (7th Cir.2000). But, Illinois has waived its sovereign immunity only to the extent of authorizing itself to be sued in the Illinois Court of Claims. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir.2 009) (citing 705 ILCS 505/8(d)); *Williamson Towing Co. v. Illinois*, 534 F.2d 758, 759–60 (7th Cir. 1976).

Accordingly, IDOC shall be dismissed because it may not be sued under § 1983 and by reason of Eleventh Amendment immunity. With respect to any intended § 1983 claim, IDOC will be dismissed with prejudice. With respect to any intended pendent state law claims, IDOC will be dismissed without prejudice to refiling in the Illinois Court of Claims.

### **Merits Review Under § 1915(A)**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Eighth Amendment claim against Dr. Ahmed, Nurse Brooks, Nurse Collins, Warden Lamb, Jane Doe Nurse #1, and Wexford for exhibiting deliberate indifference to Plaintiff's chronic back pain.

**Count 2 –** Civil conspiracy claim against Nurse Brooks, Dr. Ahmed, Jane Doe Nurse #1, and Nurse Collins for conspiring to deprive Plaintiff of his midday dose of tramadol.

**Count 3 –** State law claim for Intentional infliction of emotional distress against Nurse Brooks, Nurse Collins, and Dr. Ahmed.

**Count 1**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state such a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Seventh Circuit has held that a medical need is objectively serious if it has either "been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's chronic back and nerve pain satisfy the objective component for screening purposes. However, the analysis does not end there.

The Complaint allegations must also suggest that Defendants exhibited deliberate indifference to Plaintiff's serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and

11

"'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

### *Dr. Ahmed, Nurse Brooks, and Nurse Collins*

For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering. *Perez v. Fenoglio,* 792 F.3d 768, 777 (7th Cir. 2015) (internal citations omitted). Also, the "deliberate refusal to treat treatable pain can rise to the level of an Eighth Amendment violation." *Brown v. Darnold*, 505 F. App'x. 584 (7th Cir. 2013) (citing *Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004)).

The Court finds the deliberate indifference standard satisfied as to Dr. Ahmed, Nurse Brooks, and Nurse Collins. The Complaint suggests that these individuals altered Plaintiff's pain treatment regimen for non-medical reasons and/or failed to treat treatable pain. This is sufficient, at this early stage, to allow Count 1 to proceed as to Dr. Ahmed, Nurse Brooks, and Nurse Collins.

### *Jane Doe Nurse #1*

The Complaint fails to support a deliberate indifference claim as to Jane Doe #1. According to the Complaint, Plaintiff complained to Jane Doe #1 on September 19, 2017 about

severe back pain. (Doc. 1, p. 8). Jane Doe #1 took Plaintiff's identification card and told him she would place him on the sick call list for the next morning. *Id.* Plaintiff also requested additional pain medication, but Jane Doe Nurse # 1 denied his request. *Id.* According to the Complaint, Plaintiff was not taken to the Health Care Unit until September 23, 2018. (Doc. 1, p. 10). However, according to one of Plaintiff's grievances, Plaintiff was taken to the Health Care Unit on September 20, 2018. (Doc. 1, pp. 23-24).

These allegations fall short of suggesting deliberate indifference. Although Jane Doe Nurse #1 did not provide Plaintiff with *additional* pain medication, she did place him on the sick call list. To the extent that there was a delay in treatment (i.e. Plaintiff was not seen until September 23, 2018 as opposed to being seen on September 20, 2018), there is no indication that Jane Doe Nurse #1 was responsible for that delay. Accordingly, Count 1 shall be dismissed without prejudice as to Jane Doe Nurse #1.

*Warden Lamb*

Generally, the denial of a grievance – standing alone – is not enough to violate the United States Constitution. *See*, e.g., *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). Nonetheless, as the Seventh Circuit explained in *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015), an official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez*, 792 F.3d at 781 (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996). In *Perez*, the plaintiff sued prison doctors as well as grievance officials for allegedly inadequate medical care. The complaint, which was dismissed at screening, alleged that prison officials (1) obtained actual knowledge of the plaintiff's "objectively serious medical condition

13

and inadequate medical care through [the plaintiff's] coherent and highly detailed grievances and other correspondences" and (2) failed "to exercise [their] authority to intervene on [the plaintiff's] behalf to rectify the situation, suggesting they either approved of or turned a blind eye to [the plaintiff's] allegedly unconstitutional treatment." *Id.* at 782. The Appellate Court concluded that such allegations warranted further review and should not have been dismissed at screening. *Id.* In so holding, the Seventh Circuit explained that discovery might shed light on whether the grievance officials took investigative action or "reasonably relied on the judgment of medical professionals." *Id.* (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006)).

The same is true here. Plaintiff submitted three emergency grievances to Warden Lamb regarding his medical treatment. Warden Lamb deemed the grievances to be non-emergencies and directed Plaintiff to file a grievance in the normal manner. As the Appellate Court noted in *Perez,* discovery may reveal that Warden Lamb "took the needed action to investigate [Plaintiff's] grievances, and reasonably relied on the judgment of medical professionals." *Id.* (internal citations and quotations removed). But, "these are questions of fact that simply cannot be resolved in the absence of a record." Accordingly, at this early stage, Count 1 shall proceed against Warden Lamb.

*Wexford*

The Complaint states no deliberate indifference against Wexford, the private medical corporation that provides medical services for inmates at the prison. Plaintiff alleges that Wexford is subject to liability because of the conduct of its employees. (Doc. 1, p. 13). However, Plaintiff cannot rely on a theory of *respondeat superior*, or supervisory liability, when bringing a claim against the medical corporation under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662,

676 (2009). A private corporation will generally only be held liable under § 1983 for an unconstitutional policy or custom that results in a constitutional deprivation. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) (citing *Woodward v. Corr. Med. Servs. of Ill., Inc*., 368 F.3d 917, 927 (7th Cir. 2014)). The Complaint describes no such policy or custom attributable to Wexford. Accordingly, Count 1 shall be dismissed without prejudice as to Wexford.

**Count 2**

Plaintiff contends that Nurse Brooks, Nurse Collins, Jane Doe #1, and Dr. Ahmed conspired to deprive him of his midday pain medication. (Doc. 1, p. 15).[5] The Complaint is devoid of any factual allegations suggesting that Jane Doe #1 had *any* interactions with Dr. Ahmed. However, Plaintiff does allege that, in September 2017, Dr. Ahmed rescinded his midday Tramadol prescription for non-medical reasons (i.e. because the nurses did not want to dispense the midday medication and because he did not want any trouble with the nurses). Plaintiff's allegations pertaining to his interactions with Nurse Brooks and Dr. Ahmed on September 14, 2017 (*see* Doc. 1, pp. 6-7, 21-22) and Nurse Collins on September 23, 2017 or September 20, 2017 (*see* Doc. 1, pp. 9-10, 23-24) suggest that these individuals may have agreed, at or about that time, to deprive Plaintiff of his midday medication.

Plaintiff's conspiracy related allegations pertaining to Nurse Brooks, Nurse Collins, and Dr. Ahmed are tenuous – at best. Nonetheless, "it is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir.2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir.2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir.2002). Therefore, at this point in the litigation, the Court is

---

[5] Plaintiff also attempts to bring this claim against Nurse Dowty, Jane Doe Nurse #2, and Jane Doe Nurse #3. (Doc. 1, p. 15). However, as previously noted, the Complaint does not include any factual allegations directed against these individuals. As such, Plaintiff has failed to state a claim against Nurse Dowty, Jane Doe Nurse #2, or Jane Doe Nurse #3.

unable to dismiss Count 2 as to Nurse Brooks, Nurse Collins, and Dr. Ahmed. However, Count 2 shall be dismissed without prejudice as to Jane Doe #1 for failure to state a claim upon which relief can be granted.

**Count 3**

Plaintiff relies on the factual allegations in Counts 1 and 2 to raise a claim for intentional infliction of emotional distress (IIED) in Count 3. To prevail on an IIED claim under Illinois state law, a plaintiff must allege (1) that the defendants' conduct was extreme and outrageous, (2) that the defendants knew that there was a high probability that their conduct would cause the plaintiff severe emotional distress, and (3) that the defendants' conduct in fact caused the plaintiff severe emotional distress. *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (citing *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201 (Ill. 1992)). To satisfy the "extreme and outrageous" requirement, the defendant's conduct must be so extreme "as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas*, 607 N.E.2d at 211 (citing Restatement (Second) of Torts § 46, Comment d, at 73 (1965)). "Mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" do not rise to the level of outrageous conduct. *Kolegas*, 607 N.E.2d at 211 (quoting *McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988)) (internal quotations omitted). A factor to be considered is whether the defendant was aware of any susceptibility of the plaintiff to emotional distress due to some physical or mental condition. *Kolegas*, 607 N.E.2d at 211.

The difference between actionable and non-actionable conduct in this area can often be a matter of degree. It is plausible that a medical care provider would know that depriving an inmate of prescribed medication could cause emotional distress, particularly when the medication is used to treat chronic and severe pain and when the medication is allegedly being

16

withdrawn for nonmedical reasons. Considering this, until there is further factual development, the Court cannot say that Plaintiff's allegations are legally insufficient to state a claim. Accordingly, the Court finds that, for purposes of threshold review, Plaintiff has stated a claim for IIED against Nurse Brooks, Nurse Collins, and Dr. Ahmed.

**Pending Motions**

Plaintiff's Motion to Appoint Counsel (Doc. 4) shall be referred to United States Magistrate Judge Stephen C. Williams for disposition.

Plaintiff's Motion for Status (Doc. 6) is **DENIED** as **MOOT**.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall proceed as to **AHMED, BROOKS, COLLINS,** and **LAMB**. **COUNT 1** is **DISMISSED** without prejudice as to **JANE DOE NURSE #1** and **WEXFORD**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall proceed as to **AHMED, BROOKS,** and **COLLINS**. **COUNT 2** is **DISMISSED** without prejudice as to **JANE DOE NURSE # 1**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall proceed as to **AHMED, BROOKS,** and **COLLINS**.

**IT IS FURTHER ORDERED** that **WEXFORD, CUNNINGHAM, MEEKS, DOWTY, JANE DOE NURSE #1, JANE DOE NURSE #2, JANE DOE NURSE #3, JOHN DOE CORRECTION OFFICERS #1, JOHN DOE CORRECTION OFFICERS #2, AND JOHN DOE CORRECTION OFFICERS #3** are **DISMISSED** from the Complaint without prejudice for failure to state a claim upon which relief can be granted. The Clerk of the Court is **DIRECTED** to terminate these defendants in CM/ECF.

**IT IS FURTHER ORDERED** that **IDOC** is **DISMISSED** with prejudice with respect to any intended § 1983 claim. With respect to any intended pendent state law claims, **IDOC** is **DISMISSED** without prejudice to refiling in the Illinois Court of Claims. The Clerk of the Court is **DIRECTED** to terminate this defendant in CM/ECf.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **AHMED, BROOKS, COLLINS,** and **LAMB**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the Defendants' place of employment as identified by Plaintiff. If one of the Defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings, including Plaintiff's Motion for

Appointment of Counsel. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 10, 2018**

s/ MICHAEL J. REAGAN
**Chief Judge United States District Court**
